Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 716 | **DATE** | 5/23/2002 |
| **CASE TITLE** | Illinois District Council No. 5 vs. Donald W. West | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendant's motion to vacate the judgment (Doc. No. 35-1) of October 23, 2001 is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 24 2002 date docketed | 80 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 5/23/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO<br><br>Plaintiff,<br><br>v.<br><br>DONALD W. WEST, Individually and d/b/a TITAN ERECTORS; THOMAS E. MARZULLO Individually and d/b/a TITAN ERECTORS; AND TITAN ERECTORS, INC.<br>Defendants. | No. 01 C 716<br><br>Judge Rebecca R. Pallmeyer<br><br>DOCKETED<br>MAY 2 4 2002 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, ("the Bricklayers" or "the Union") entered into a collective bargaining agreement ("CBA") with an unascertained individual acting on behalf of Titan Erectors ("Titan"). After Titan allegedly failed to pay wages and fringe benefit fund contributions, the Bricklayers filed a grievance against Titan pursuant to the requirements of the CBA. A Joint Arbitration Board ("JAB") issued an award in favor of the Union, finding Defendants Titan and Donald West, doing business as Titan, to be liable for the full amount of damages. The Defendants have not yet complied with the JAB's award, and the Bricklayers instituted this action on February 1, 2001, requesting this court to enforce the arbitration award entered in their favor and against Defendant West. At a deposition of Defendant West on September 25, 2001, however, the parties decided to settle. Pursuant to the settlement agreement, this court entered judgment in the amount of $65,256.07 plus 10% annual interest against Mr. West on October 23, 2001. The same day, Plaintiff's attorney sent a copy of the agreed judgment order and the work papers of the Union auditors to the Defendants' attorneys. On November 1, 2001, Defendant West filed this motion to



vacate the judgment of October 23, 2001, alleging, first, that Plaintiffs engaged in fraud by willfully failing to produce audit work papers to Defendant until after entry of the agreed judgment, and, second, that there never was a valid arbitration agreement. For the reasons discussed below, West's motion to vacate judgment is denied.

## FACTUAL BACKGROUND

### A. Arbitration Proceedings

The Union is a "labor organization" and the Defendants are "employers" within the meaning of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 152(5), (2). The Bricklayers and Titan were parties to a three-year collective bargaining agreement, effective May 28, 1999, which established a grievance and arbitration process. The CBA went into effect on May 28, 1999. (May 28, 1999 Collective Bargaining Agreement ("CBA"), at 2, Ex. X to Defendant's Reply to District Council #1's Statement in Opposition to Vacate Judgment of October 23, 2001 (hereinafter "Defendant's Reply").)[1] The CBA established a binding Joint Arbitration Board process to settle any disputes arising from the agreement.

On November 12, 1999, the Union informed Titan that a grievance had been filed, alleging that Titan had failed to pay wages or to make contributions to the fringe benefit fund. The matter proceeded to arbitration, and the Joint Arbitration Board issued its finding on December 1, 1999. (JAB Award, Ex. A to Defendant's Reply.) The Board found that Titan had violated the CBA and was responsible for payment of any and all delinquent wages and benefit fund contributions. (*Id.*) The JAB also required Titan to pay for a payroll audit to determine the amount of wages owed. (*Id.*)

On June 8, 2000, on completion of the audit, the JAB determined that "along with Titan . . .

---

[1] Somewhat confusingly, the Exhibits appended to Defendant's Reply are not in purely alphabetical order. Exhibit X comes before Exhibit A.

2

Mr. Don West is personally liable" to the Union for $65,256.07 in unpaid wages, delinquent fund contributions and audit fees, plus 10% annual interest beginning from the date of the original hearing on December 1, 1999. (JAB Award, Ex. B to Defendant's Motion to Vacate Judgment of October 23, 2001 (hereinafter "Defendant's Motion").) Titan and West were also responsible for fees for any legal action to enforce this award. (*Id.*) On August 17, 2000, the Union sent Defendants a copy of their completed payroll audit, which determined the amount owed to be $65,256.07. (Union's Audit, Ex. E to Defendant's Reply.) In response, the Defendants sent a letter to the Plaintiffs on September 11, 2000, disagreeing with the figure the Union auditors had come up with, and requesting further records and a conference. (Letter from Radice to the Union of 9/11/00, Ex. A to Defendant's Motion.)

Neither Titan nor West complied with the JAB award; nor did Titan or West file suit to vacate that award within the 90-day period after receiving notice. Consequently, on February 1, 2001, the Bricklayers filed suit against Titan, and Don West and Thomas Marzullo, individually and doing business as Titan, seeking judicial enforcement of the JAB award.

B.   **Judicial Enforcement Proceedings**

On August 1, 2001, attorneys for Defendants sent a letter to Barry Bennett, attorney for the Plaintiffs, requesting him to produce "all documents, corresponds [sic], etc., regarding the audit which is the subject matter of the lawsuit." (Letter from Dunford to Bennett of 8/1/01, Ex. C to Defendant's Motion.) On August 8, 2001, Bennett provided copies of the material he considered responsive to the request.[2] (Declaration of Barry M. Bennett ("Bennett Declaration") ¶ 4, Plaintiff District Council No. 1's Statement in Opposition to Motion to Vacate Judgment (hereinafter

---

[2]   The briefs before the court do not indicate what documents Mr. Bennett produced in response to Defendant's letter of August 1, 2001. Mr. Bennett states that "included in the material I provided August 8 were all documents the Union or I had received from the accountants or Titan in connection with the audit." Bennett Declaration ¶ 4.

3

"Plaintiff's Statement in Opposition").)[3]

On September 20, 2001, attorneys for the Defendants informed Bennett that they were seeking the "working papers, trial balances, drafts of financials [sic] statements, final financial statements, notes, memoranda, or any other documents used as a basis for determining that Titan Erectors liable [sic] to the plaintiff union for $65,000.00" (Letter from Dunford to Bennett of 9/20/01, Ex. C to Plaintiff's Statement in Opposition), and stated that they would not produce Mr. West or Mr. Marzullo for their depositions until the documents were produced and reviewed. (Letter from Brinton to Bennett of 9/20/01, Ex. D to Defendant's Motion.) The same day, Mr. Bennett contacted the accounting firm and asked them to provide the papers. (Bennett Declaration ¶¶ 6, 8.)

On September 25, 2001, at the deposition of Defendant West, the parties reached a settlement pursuant to which West agreed to pay $65,256.07 by October 17, 2001. (Transcript of Hearing of 10/23/01, at 3, Ex. A to Plaintiff's Statement in Opposition.) The settlement provided that if Defendant West did not pay the required amount by October 17, a judgment would be entered against him on October 23, 2001 enforcing the Joint Arbitration Board award against him. (*Id.* at 5.) Defendant's lawyers made no mention of the work papers during this hearing. (*Id.* at 3-6.) On October 9, 2001, after this settlement was struck, Mr. Bennett received the documents he had requested from his accounting firm. (Bennett Declaration, ¶¶ 6, 8.) Bennett did not provide the documents to Defendant's counsel at that time because he believed that the settlement would substantially or entirely resolve the case, and Defendant's counsel had indicated that West would make the required payment. (*Id.* ¶ 10.)

West did not make the payment by October 17, and thereafter, in accordance with the agreement, Bennett prepared a proposed order entering judgment against West. (Plaintiff's

---

[3] Plaintiff's Statement in Opposition does not assign the Bennett Declaration an Exhibit letter. The Bennett Declaration is the first appended document after Plaintiff's legal argument.

4

Statement in Opposition ¶ 11; Bennett Declaration ¶ 9.) The Defendant's attorney accepted that order and Bennett presented it to this court on October 23. (Plaintiff's Statement in Opposition ¶ 11.) At the hearing, Bennett and Mr. Dunford, one of Defendant's attorneys, discussed the need to renew discovery because the payment had not been made. Dunford told Bennett that he needed the work papers, and Bennett agreed to provide the materials later in the day. (Id. ¶ 12; Bennett Declaration ¶ 10.) Later on October 23, 2001, Bennett did send a copy of the agreed judgment and the Union auditor's work papers to Defendants. (Id.)

## C. Motion to Vacate Judgment

On November 15, 2001, Defendant West filed this motion to vacate the judgment of October 23 on grounds of fraud and intentional concealment. Defendant argues that the Union, its auditors, and others deliberately and intentionally refused to account for the fact that the workers had already been paid by the prime contractor. (Defendant's Reply ¶ 2.) Defendant claims that this deliberate oversight led him to think the unpaid contributions amounted to $45,000. Instead, West asserts, the working papers demonstrate the amount outstanding is only $28,911.44. Defendant West claims he would not have entered into the agreed judgment had he first received the working papers. (Id.)

Defendant's second contention is that the JAB award was unauthorized because there was no valid signature on the arbitration agreement. (Defendant's Reply ¶ 3.) Defendant alleges that the agreement was signed not by Tom Marzullo but by Terry Martin of Titan Erectors. Defendant claims that there never was a Titan Erectors, and therefore, Martin had no authority to sign the agreement.[4]  Therefore, Defendant argues, the award is void. (Id.)

---

[4] Defendant's argument on this point is difficult to follow. He asserts that "Plaintiff agrees that there is not and never has been a Titan Erectors, Inc," but the only evidence cited for this claim is the Collective Bargaining Agreement between the Union and Titan. (CBA.) Defendant neither explains Titan's role in this transaction nor explicitly contends that Titan is not an incorporated entity. In any event, the court need not resolve any issue regarding Titan's corporate (continued...)

5

In response to this motion, Plaintiffs argue that because Defendants failed to challenge the award within 90 days of receiving it, they are barred from defending this enforcement action on any grounds that they could have raised in such a challenge. (Plaintiff's Statement in Opposition ¶ 6.) Furthermore, Plaintiffs contend that the Union acted diligently to obtain the work papers when the Defendants requested them, neither West nor his lawyer requested those papers at the deposition where the settlement agreement was reached, and neither West nor his lawyer requested those papers when entering into the agreed order that the Court entered on October 23, 2001. (*Id.*)

## DISCUSSION

### A.  Standard of a Motion to Vacate Judgment

Federal Rule of Civil Procedure 60(b) provides that a district court may relieve a party from final judgment for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, and fraud. FED.R.CIV.P. 60(b). A Rule 60(b) dismissal is an "extraordinary remedy and is granted only in exceptional circumstances." *Dickerson v. Board of Educ. of Ford Heights*, 32 F.3d 1114, 1116 (7th Cir. 1994). To warrant the vacation of a judgment for fraud and misrepresentation in procuring the settlement upon which the judgment is based, the existence of such fraud must be established by clear and convincing evidence. *Di Vito v. Fidelity and Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966). Rule 60(b) "is not intended to enable litigants to avoid the consequences of a decision to settle or compromise which in retrospect appears unfortunate." *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir. 1980). The court has discretion to determine whether the facts require vacating its earlier orders. *Id.*

---

[4](...continued)
status to decide West's motion to vacate.

## B. Fraud and Misrepresentation Claim

The court takes special note that the substance of this motion is in essence a challenge to the validity of the arbitration award. It is well settled that failure to challenge an arbitration award within the applicable limitations period renders the award final. *See Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996); *International Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). "Thus, those challenges in the nature of grounds to vacate the award may not be asserted as defenses to a subsequent enforcement action." *Centor*, 831 F.2d at 1311. This rule is "intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 277 (7th Cir. 1989). The court has little difficulty in classifying the challenges made by Defendant West as ones that could have been asserted in an action to vacate the award. Defendant's challenges are to the validity of the award Plaintiff seeks to enforce. The relief he seeks by way of defense is to nullify the award. The only avenue available for such relief is a timely suit to vacate.

Federal law dictates that any action to vacate an arbitration award entered pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, must be brought within the time limits established by the appropriate state statute of limitations. *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966). Under the Illinois Arbitration Act, the appropriate statute of limitations for challenges to arbitration awards covered by federal labor arbitration law is 90 days. *See* 710 ILCS 5/12(b) (West 1996); *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 429 (7th Cir. 1998).

The record in this case clearly establishes that Defendant did not seek vacation of the arbitration award within 90 days of receiving notice of the award. The 90 day limitation period

7

began to run on the day West became aware of the award. See 710 ILCS 5/12. West argues that his September 11, 2000 letter to the Bricklayers, disagreeing with the Union Auditor's figure and asking for further records and a conference, constituted a timely appeal of the arbitration award. (Defendant's Reply, at 3.) Neither Defendant nor the court has located any cases holding that a timely letter to an adversary is sufficient to halt the statute of limitations, however. In addition, the language of the Seventh Circuit's opinions on point does not support Defendant's position. See Sullivan v. Gilchrist, 87 F.3d 867, 871 (7th Cir. 1996) (dismissing defendant's arguments at enforcement stage because the "only avenue for [nullification of award] is a timely suit to vacate"); Association of Flight Attendants v. Republic Airlines, Inc., 797 F.2d 354, 355 (7th Cir. 1986) (holding that "failure to move to vacate an arbitration award within the applicable limitations period barred [defendant] from raising flaws in the award as affirmative defenses to the plaintiff's suit to enforce the award.") Accordingly, the court concludes that Defendant should have raised the issue in an action to vacate the award, and his failure to do so within the limitation period precludes him from raising such contentions at this juncture.

Even if Defendant's challenge were timely, the court concludes it fails on its merits. Under the Illinois Arbitration Act, an arbitration award shall be vacated if it was "procured by corruption, fraud, or other undue means." 710 ILCS 5/12(a)(1). Defendant argues this standard is met here, citing two Illinois appellate court opinions in support of his position: Hawrelak v. Marine Bank, 316 Ill. App. 3d 175, 735 N.E.2d 1066 (4th Dist. 2000), and Pekin Ins. Co. v. Benson, 306 Ill. App. 3d 367, 714 N.E.2d 559 (1st Dist. 1999). These cases defeat defendant's position, not support it, however.

In Hawrelak, the Fourth District Appellate Court reversed the trial court's vacatur of the arbitration award on grounds of fraud, holding that the arbitrator's premature disclosure of the decision to the employer and not to the former employee had no effect on the final award. 316 Ill. App. 3d at 179, 735 N.E.2d at 1069. The court noted that

8

> [b]ecause the parties to an arbitration did not bargain for a judicial determination, a reviewing court cannot set aside an arbitration award because of errors in judgment or mistakes of law or fact. *Gross* errors of judgment in law or *gross* mistakes of fact may be reviewable, but only if they are apparent upon the face of the award (citations omitted) (emphasis in original). A party seeking to vacate an arbitration award must provide clear, strong, and convincing evidence that the award was improper.

*Id.* at 179, 735 N.E.2d at 1069. The court concluded that "[a]bsent *any* evidence that this award was made in bad faith, that any of the arbitrators were guilty of fraud, or corruption, or that the arbitrators deliberately chose not to follow the law," an arbitration award could not be vacated. *Id.* at 181, 735 N.E.2d at 1070.

In the case before this court, Defendant has failed to provide any clear, strong, or convincing evidence that the final arbitration award was procured by undue means. The mere existence of the working papers is not clear and convincing evidence that the representations made by Plaintiff's attorney were fraudulent. Nor does the accompanying affidavit of Thomas Marzullo filed by Defendant constitute clear and convincing evidence of fraud. (Marzullo Aff., Ex. D to Defendant's Reply.)[5] Mr. Marzullo's affidavit alleges that the Union Auditor's report fails to account for payments made to Union workers and overstates the dues owed to the Union. (*Id.* ¶¶ 4-7.) Other than the Defendant's conclusions that the Plaintiffs have engaged in a deliberate attempt to conceal facts, there is no evidence of fraud here. The judgment was entered in a form approved by Defendant's own lawyers. As noted, Defendant's counsel made no mention of the work papers when the agreement was reached. Even if there had been concealment or fraud on Plaintiff's part, Defendant had every opportunity to get the working papers of the Union's audit.

Nor does the court find any bad faith on the part of Plaintiff's counsel. Defendant's earlier requests for "all documents, corresponds [sic], etc., regarding the audit" (Letter from Dunford to Bennett of 8/1/01, Ex. D to Plaintiff's Statement in Opposition) are quite different from the request

---

[5] Defendant's Reply appends two Exhibits labeled Exhibit D. The Exhibit cited here is the second Exhibit D.

made on September 20 for "all working papers, trial balances, drafts of financials [sic] statements, final financial statements, notes, memoranda, or any other documents used" to determine the amount. (Letter from Dunford to Bennett of 9/20/01, Ex. C to Plaintiff's Statement in Opposition) Once Defendant made a specific request for copies of the working papers on October 23, 2001, Plaintiff's attorney produced them promptly. Defendant now claims he was mistaken about the amount due before entering into the settlement. As *Hawrelak* instructs, however, mistakes of law or fact are not enough to set aside an arbitration award.

Defendant cites to *Pekin Ins. Co. v. Benson*, for the proposition that an arbitration award may be vacated if it is not final. The court fails to see how *Pekin* is relevant. To begin, Defendant does not explain why he believes the arbitration award is not final. In addition, it is not clear that *Pekin* stands for the proposition for which Defendant cites it. In *Pekin*, the trial court had stayed arbitration of a claim for underinsured motorist benefits pending the insurer's appeal of a coverage issue, but conditioned the stay on the insurer's payment of interest. The Illinois appellate court considered whether that order was final and appealable. 306 Ill. App. 3d at 376, 714 N.E.2d at 563. The court concluded that orders involving motions to stay arbitration are not final but interlocutory, in part because they are injunctive in nature. *Id.* at 375, 714 N.E.2d at 565. No motion to stay arbitration is involved in this case.

Because Defendant took no action with respect to this arbitration decision within the applicable limitations period, his motion to vacate the judgment is time-barred and therefore denied.

C.  **Validity of the Arbitration Agreement**

Defendant's second contention is that because the arbitration agreement bears no authorized signature, the award is void. (Defendant's Reply ¶ 3). Defendant alleges that the Arbitration Agreement was signed not by Tom Marzullo, but by Terry Martin, purportedly as Vice President of Titan Erectors Inc. Defendant argues that there is no Titan Erectors, Inc. and there

10

never has been such an entity. Therefore, according to Defendant, Mr. Martin could have no authority to sign the Agreement. (*Id.*) Because the Defendant could clearly have raised this type of allegation in a motion to vacate the arbitration award and failed to do so, the court declines to address the substance of this claim.

The court notes in closing that its ruling does not leave Defendant without recourse if the arbitration award proves to have been excessive. Under the express terms of the order this court issued on October 23, 2001, "[u]pon receipt by [the Union] of the required payment, or earlier if the parties so agree, representatives of [the Union] and Mr. West will exchange documents and information as necessary in an attempt to reach agreement to the greatest extent possible on the proper amount owed in connection with the dispute presented to the . . . JAB and decided by the JAB through the award . . . Any aspects of the Dispute that cannot be resolved through agreement between the parties will be presented to the JAB for resolution and the JAB's ruling will be final and binding." (October 23, 2001 Order ¶¶ 3(a)-(b).)

## CONCLUSION

For the reasons explained above, Defendant's motion to vacate the judgment (Doc. No. 35-1) of October 23, 2001 is denied.

ENTER:

Dated: May 23, 2002

REBECCA R. PALLMEYER
United States District Judge

11