Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 716 | **DATE** | 8/20/2002 |
| **CASE TITLE** | Illinois District Council No. 1, et vs. Donald W. West, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/6/2002 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion for summary judgment against Defendant Radice (Doc. No. 69-1) is granted. Judgment is entered in favor of Plaintiff and against Defendant Radice in the amount awarded by the JAB.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 2 1 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials 8/20/2002 | |
| | Copy to judge/magistrate judge. | | |
| ETV | courtroom deputy's initials | date mailed notice ETV mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

| | |
|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 )<br>OF THE INTERNATIONAL UNION OF )<br>BRICKLAYERS AND ALLIED )<br>CRAFTWORKERS, AFL-CIO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD W. WEST, Individually and )<br>d/b/a TITAN ERECTORS; THOMAS E. )<br>MARZULLO, LADDIE FROMELIUS, )<br>TERRANCE M. MARTIN, GERALD V. )<br>RADICE, and LARRY FROMELIUS, )<br>Individually and d/b/a TITAN ERECTORS;)<br>AND TITAN ERECTORS, INC. )<br>)<br>Defendants. ) | No. 01 C 716<br><br>Judge Rebecca R. Pallmeyer |



DOCKETED
AUG 21 2002

## MEMORANDUM OPINION AND ORDER

On or around May 28, 1999, Plaintiff Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, (the "IDC" or the "Union") entered into a collective bargaining agreement ("CBA") with persons acting on behalf of an employer entity called Titan Erectors ("Titan"). When Titan allegedly failed to pay wages and fringe benefit fund contributions, the IDC filed a grievance against Titan pursuant to the requirements of the CBA. A Joint Arbitration Board ("JAB") issued an award in favor of the Union on June 8, finding Defendants Titan and its principal, Defendant Donald W. West, liable for the full amount of damages. Following an audit on December 14, 2000, a copy of the JAB's written decision was served on Titan and West by mail. The Defendants have not yet complied with the JAB's award. The IDC timely filed this action on February 1, 2001, requesting this court to enforce the arbitration award entered in its favor and against Donald W. West, Thomas E. Marzullo, and Titan. In two amended complaints, IDC named additional Defendants: Laddie Fromelius, Terrance M. Martin, Gerald V. Radice, and Lary Fromelius, individually, and d/b/a Tiitan. The IDC now moves for summary judgment against

Defendant Gerald Radice ("Radice"), arguing that because the unincorporated Titan is required to comply with the JAB award, and because Radice misleadingly held himself out as the "president" of what amounted to a non-existent corporation, Radice is personally liable for Titan's unpaid obligations under the CBA. For the reasons set forth below, the motion is granted.

## **FACTUAL BACKGROUND**

The Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5). (Answer to Plaintiff's First Amended Complaint ¶ 2 (hereinafter "Ans").) Titan Erectors is a business entity which is not incorporated, but is an "employer" within the meaning of 29 U.S.C. § 152(2). (*Id.* ¶ 3.) Gerard V. Radice ("Radice") and Donald W. West ("West") are individuals who are "persons" within the meaning of 29 U.S.C. § 152(1) and who were involved in Titan, as explained below. (Plaintiff's First Amended Complaint (hereinafter "Pl.'s Am. Compl.") ¶ 8.) This court has jurisdiction over this matter and venue is proper pursuant to § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and (c). (Ans. ¶ 1.)

The business entity known as Titan came into existence as a result of discussions in 1998 among a group of people involved with an entity named Fortech, LLC ("Fortech"), which is in the business of manufacturing building panels. (12/7/01 Deposition of Gerald V. Radice ("Radice Dep."), Exhibit to Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl.'s SJ Memo"), at 10[1]; 9/25/01 Deposition of Donald West ("West Dep."), Ex. to Pl.'s SJ Memo, at 7-8, 16.) Radice and West testified that this group of people decided to create a separate business entity that would install the building panels manufactured by Fortech. (*Id.*) The first meeting held for purposes of establishing Titan occurred on January 31, 1998, and included Defendants Radice,

---

[1] Plaintiff has not provided an exhibit number or letter for the depositions given by Radice or West. In the materials attached to Plaintiff's summary judgment memorandum, Exhibits A through L are followed in succession by copies of Plaintiff's First Amended Complaint; Radice's Answer to the First Amended Complaint; the declaration of Angelina Mieliulis, Mr. Radice's deposition transcript, and Mr. West's deposition transcript.

2

West, Thomas E. Marzullo, Terrance M. Martin, and Larry Fromelius, along with Mike Romanelli.[2] (Radice Dep., at 10, 18, 119-21.) Radice described Titan as a "venture" comprised of the individuals present at the meeting other than Mike Romanelli, who was present as a potential employee. (*Id.*, at 24, 266-268.) Radice agreed to become involved in the venture by taking "charge of the administration effects, the administration of the entity that was being formed," and considered himself part of the venture. (*Id.*, at 16-17, 24.) There were no compensation arrangements established for Radice when he began to perform tasks on behalf of Titan, but he felt confident that he would be compensated at some point. In fact, he never billed Titan and was never paid directly for any of his work. (*Id.*, at 15, 18, 63-64.)

On February 23, 1998, Radice first interacted with an outside person or entity on behalf of Titan, when he completed an application for an employer identification number from the Internal Revenue Service. (*Id.*, at 18-20.) He signed the application and designated himself as "President" on the application. (*Id.*) After completing the application, Radice informed some of the other members of the venture that he had applied for the employer identification number and provided them with copies of the application. (*Id.*, at 26.) On February 26, 1998, Radice completed a corporate resolution form on behalf of Titan in order to open a bank account at Northern Trust Company. (*Id.*, at 29-30, 33-34.) On that form, he listed the company's name as "Titan Erectors, Inc.," indicated on the form that he had been elected President of the company, and identified Thomas Marzullo as Secretary-Treasurer. (*Id.*) Radice informed Marzullo on the same day that he had designated him as Secretary-Treasurer.[3] (*Id.*)

On or around May 28, 1999, an unspecified representative of Titan signed a collective

---

[2] The transcript of Mr. Radice's deposition spells the name Rominelli, but the court will use the spelling that appears in Plaintiff's briefs.

[3] The record does not explain how Radice informed Marzullo of this fact.

bargaining agreement with the Union.[4] (Pl.'s Am. Compl. ¶ 9; Ans. ¶ 9.) The CBA incorporates by reference certain substantive provisions of collective bargaining agreements negotiated between the Union and various employer associations. (Pl.'s Am. Compl. ¶ 10; Ans. ¶ 10.) West testified that he and Martin "may have" provided an address for Titan located on State Street in Chicago. West also operated other businesses at this State Street address in Chicago. (West Dep., at 18, 30, 40.)

On July 21, 1999, Radice and Marzullo went to the Union's offices to obtain information regarding the hourly payments to be made for health and welfare, pension, annuity, and other related issues. (Radice Dep., at 48-49, 53-59.) While there, Radice submitted a personal check in the amount of $1,000.00 to a representative of Bricklayers Local 21, an affiliate of the Union, to cover the first part of the initiation fee payments for five of Titan's employees. (*Id.*, at 48-49, 95-96.) While Titan operated under the CBA, Radice instructed a payroll processing company of the amounts each employee should be paid.[5] (*Id.*, at 44-46.) Marzullo obtained and prepared the forms for reporting hourly work by employees represented by the Union and paying fringe benefit fund contributions on their work, and Radice signed them. (*Id.*, at 251-53.) According to Radice, none of the payments for fringe benefit fund contributions were made because there was "[n]o money." (*Id.*, at 253.)

On numerous occasions when Titan needed funds to satisfy various financial obligations (other than its obligations to the Union), Radice informed West or Marzullo, who would then provide Radice with the necessary funds to cover the obligations. (*Id.*, at 60-61.) On at least 12 other occasions, Radice satisfied Titan's financial obligations from his own account, or made deposits

---

[4] The record currently before the court does not include a copy of the CBA. Defendant does not dispute that a Titan representative signed the CBA, and the JAB's proceedings note that the CBA was signed on May 28, 1999 by Marzullo. (JAB Summary of 6/8/2000 Meeting, Ex. D to Pl.'s SJ Memo.)

[5] It is unclear from the record how long Titan operated under the CBA.

from his personal account into the Titan account, totaling some $30,000. (*Id.*, at 83-103, 219-229, 239-241, 256.) While Radice covered various expenses of Titan from his own account, he never made such payments with respect to the benefit fund contributions because he "never thought of it." (*Id.*, at 253-254.) On at least three occasions, Radice wrote checks to himself on Titan's account, totaling $4,300.00, without the approval of any other members of the venture. (*Id.*, at 215-218, 229-233.) When asked about these checks, Mr. Radice testified that he believed he was the only one within the Titan organization who had the authority to approve the payments. (*Id.*, at 218.) Although he made payments on behalf of Titan and made payments to himself from Titan's account, Radice did not think to make payments concerning the wages to employees and contributions to the benefit funds providing medical insurance and retirement benefits to the employees, even though he knew that Titan was responsible for and had not satisfied such obligations. (*Id.*, at 255-258.)

On November 12, 1999, the Union sent a letter to Titan at the State Street address provided in May 1999, stating a grievance involving alleged failures to comply with the CBA. (11/12/99 Letter from Pete Marinopoulos to Titan, Ex. A to Pl.'s SJ Memo, at 1.) The November 12 letter notified Titan that a hearing would be held on December 1 regarding that grievance before the JAB. (*Id.*) Titan acknowledged receipt of the November 12 letter on November 15, 1999. (Certified Mail Receipt of 11/15/99 signed by Marzullo, Ex. A to Pl.'s SJ Memo, at 2.) It is undisputed that Titan representatives provided the Union with the State Street address when the CBA was signed. (Declaration of Angelina Mieliulis, Administrative Manager of the Union, Ex. to Pl.'s SJ Memo ¶ 4.) Defendant Radice notes, however, that the letter was addressed to Titan, and not to *his* attention.[6] (Defendant's Response to Plaintiff's Statement of Uncontested Facts ¶ 24 (hereinafter "Def.'s 56.1 Resp.").)

---

[6] There is no indication on the record that Radice ever notified the Union that correspondence should be sent to his attention.

5

On December 1, 1999, West appeared at the JAB hearing and made arrangements with the Union to keep Titan in business and agreed to personally guarantee Titan's obligations as a condition of the JAB's agreement to permit Titan to continue operations. (Letter from Bennett to West of 12/07/99, Ex. B to Pl.'s SJ Memo.) The letter addressed to and acknowledged by West states in relevant part:

> This letter will confirm the arrangements made at the meeting of the Joint Arbitration Board on December 1. You agreed that as a condition of the JAB not ordering your company to cease all operations until full payments are made, you would provide a personal guarantee for the obligations owed by Titan Erectors under the collective bargaining agreement.

(*Id.*) Defendant Radice admits this allegation but asserts that West's decision to personally guarantee Titan's obligations is immaterial to him. (Def.'s 56.1 Resp. ¶¶ 25-26.)

The record does not reflect any further correspondence regarding arbitration proceedings until May 24, 2000. On that date, the IDC sent a letter notifying Titan that a JAB hearing would be held on June 8 to reconsider the Union's November grievances. (Letter from Marinopoulos to West of 05/24/00, Ex. C to Plaintiff's SJ Memo.) On June 8, 2000, the JAB rendered its decision on the charges and found that Titan and West were in violation of their obligations and were required to pay all wages, benefit fund contributions, and other obligations due from May 1999 to date. (JAB Summary of 6/8/00 Meeting, Ex. D to Plaintiff's SJ Memo.) The JAB also ordered Titan to conduct a wage and benefit audit from May 1999 to date which would result in a further award based on those results. (*Id.*) The Union enclosed the JAB award notification in a July 14, 2000 letter it sent to Titan and West at the State Street address. (Letter from Marinopoulos to West of 07/14/00, Ex. E to Plaintiff's SJ Memo.) Radice does not contest Plaintiff's statements regarding the JAB award rendered on June 8, nor does he rebut the information set forth in the letters sent to Titan and West on May 24 or July 14. Radice reiterates, however, that West's personal guarantee of Titan's obligations is immaterial to his own liability, and further points out that none of these notices were addressed specifically to his attention. (Def.'s 56.1 Resp. ¶¶ 27-29.)

6

Following completion of the audit, the JAB rendered a decision against Titan and West, awarding the Union $65,256.07 for wages to employees, fringe benefit fund contributions, liquidated damages, dues, and audit fees. (JAB Award Declaration ("JAB Award"), Ex. F to Pl.'s SJ Memo.) The award states that Titan retains the right through the arbitration process to contest the amount awarded:

> When [Titan] and/or West pay that full amount to District Council No. 1, they may request that the money not be distributed until a further hearing before the Joint Arbitration Board can be held and at that hearing they may present whatever arguments and evidence they wish in support of a request that the amount owed be reduced and a portion of the payment be returned to them.

(*Id.*) Moreover, the JAB award articulates the consequences in the event Titan and West fail to abide by the terms of the award:

> In the event the employer [Titan] and Mr. West fail to abide by the terms of this award and the Union and/or the funds resort to legal action to enforce the award, the employer and Mr. West shall reimburse the Union and/or the funds for all costs and legal fees incurred in enforcing the award, and the employer and Mr. West shall also be liable for interest at the rate of 10% a year from the date of the original hearing on December 1, 1999, to the date of payment.

(*Id.*) Defendant Radice argues that the award declaration is not final on its face. (Def.'s 56.1 Resp. ¶ 30) The court notes, however, that the award itself states at the end of the first paragraph that it is a "FINAL AWARD." (JAB Award.) Radice also questions the finality of the JAB award in light of two letters of protest from Radice and Marzullo, but the court notes that those letters were sent in September and October 2000, prior to entry of the Final Award. (Def.'s 56.1 ¶ 30; Letter from Radice to Marinopoulos of 9/11/00, Ex. A-1 to Def.'s 56.1 Resp. ("Radice letter"); Letter from Marzullo to Mary E. Frost of Oct. 16, 2002 ("Marzullo Letter"), Ex. A-3 to Def.'s 56.1 Resp.)[7]

The Union attached a copy of the JAB's award decision in a letter sent to Titan at the State Street address on December 14, 2000. (Letter from Marinopoulos to West of 12/14/00, Ex. G to

---

[7] The October 16, 2000 letter names both Radice and Marzullo as contacts for discussion of the disputed amounts owed. The court infers that Ms. Frost was one of the Union's auditors.

7

Plaintiff's 56.1 Statement.) In keeping with its prior mailings, the Union used this address because it had been provided by representatives of Titan when they signed the CBA. (Mieliulis Decl. ¶ 4.) When the Union did not receive an acknowledgment of receipt, the Union arranged for the JAB award letter to be delivered by hand to West's residence in Lake Forest on January 21, 2002. (Ex. F to Plaintiff's 56.1 Statement; Letter from Marinopoulos to West of 12/14/00, Ex. G to Plaintiff's 56.1 Statement; Letter from Philip P. Ducar, Special Process Server, to West of 01/25/01, Ex. H to Plaintiff's 56.1 Statement.) Defendant Radice claims he has no knowledge of the award letter being mailed to the State Street address or hand delivered to West's residence and notes further that his name was not on any of the letters. (Def.'s 56.1 Resp. ¶ 31.)

To date, the Defendants have not complied with the JAB award. (Pl.'s Am. Compl. ¶ 17.) Furthermore, neither Titan nor West ever filed a lawsuit to vacate the award. None of the Defendants made any formal challenge to the JAB decisions until May 9, 2001, when Titan, West, and Marzullo filed their Answer to the Complaint to enforce the arbitration award. (Mieliulis Decl. ¶ 5.) Although Radice acknowledges that no lawsuit was filed to vacate the award, he asserts that a "motion" to vacate the award was filed before the JAB in November 2001, which resulted in a subsequent audit in which the auditors calculated the benefit delinquencies, excluding the summary of wages, to total $35,830.46. (Letter from Eisen, Fey & Associates to IDC of 01/17/02 ("Eisen, Fey Letter"), Ex. B to Def.'s 56.1 Resp.) Moreover, he maintains that the September and October letters objected to the amount set forth in the JAB award. (Radice Letter; Marzullo Letter.)[8]

On or around November 1, 2001, Defendant Radice and Marzullo prepared a letter that Radice then sent on behalf of Titan to former employees with outstanding wage claims. (Letter from Radice to Employees of Titan of 11/01/01 ("11/01/01 Employees Letter"), Ex. I to Plaintiff's SJ Memo.; Radice Dep., at 171-175.) The letter asked the former employees to verify amounts

---

[8] Paragraph 33 of Defendant's 56.1 Response cites to Exhibit A-2 as a letter contesting the JAB award, but no such exhibit is attached to the 56.1 Response before the court.

8

that Radice and Marzullo proposed were due them, stated that Titan would prepare a final net check reflecting payroll taxes, Social Security withholding, and advances previously received, and advised that the employees would receive a Form W-2 for year 2001. (11/01/01 Employees Letter.) The letter appeared on Radice's personal letterhead and featured Radice's signature without any particular title or position designation. (11/01/01 Employees Letter; Radice Dep., at 171-175.) Despite the letter's explicit statement that employees would "receive a Form W-2 for year 2001," and the undisputed fact that 2001 W-2 forms could only have been issued to Titan employees who had received payment by December 31 of that year, Radice stated that at the time he sent the letter, he did not know whether there was money available to make the employee payments promised in the letter and only "hoped that the money would be there." (11/01/01 Employees Letter; Radice Dep., at 179-183.)

At some unspecified date, the Union charged Radice with improper direct dealing because of the letters he sent in November 2001.[9] Radice hired a lawyer selected by West from R.T. Blankenship & Associates to represent him in the unfair labor practice proceedings brought against him. Defendant Marzullo provided the retainer payment to the lawyer. (Radice Dep., at 183-184, 189-190.) On December 9, 2001, Jonathan Sturgill, a lawyer from R.T. Blankenship & Associates, faxed a letter to Radice and West, explaining that the NLRB planned to issue a complaint unless Titan rescinded the November 2001 letter, in which case the Union would withdraw the charge against Radice. (Letter from Sturgill to Radice and West of 12/09/01, Ex. J to Plaintiff's S.J. Memo.) On January 14, 2002, Radice sent a second letter on behalf of Titan to all employees from 1999 and 2000, stating that "Titan Erectors formally rescind[s] . . . the previous November 1, 2001 correspondence sent . . . by Gerard V. Radice" and indicating that "any and all responses received

---

[9] In its submissions, Plaintiff has not included copies of any of the Union's communications regarding Defendant's alleged direct dealing with former Titan employees. Defendant does not dispute that Plaintiff initiated unfair labor practice proceedings on these grounds. (Def.'s 56.1 Resp. ¶ 36.)

9

from any employee regarding the previous November 1, 2001, correspondence shall be disregarded by the employer." (Letters from Radice to Former 1999, 2000 Employees of Titan of 01/14/02, Ex.s K and L to Plaintiff's 56.1 Statement.)

## DISCUSSION

The central issue in this case is whether Defendant Radice may be held liable for the arbitration award issued by the JAB. The IDC argues that Radice is liable for Titan's unpaid obligations under the JAB award and has moved for summary judgment on this issue. The IDC asserts that Radice is personally liable for Titan's obligations under Illinois statutory and common law, which provides that individuals who act on behalf of an unincorporated business entity are liable for all resulting debts and liabilities. Defendant Radice contends that the audit award issued by the JAB is not final, is not accurate, and has not been confirmed by a court. Radice also argues that he cannot be held personally liable for Titan's obligations because he was deprived of due process by not being given the opportunity to appear before the JAB and by being subjected to an arbitration award that was not entered against him individually. For the reasons explained here, the court finds that the IDC is entitled to summary judgment on this issue and concludes that Radice is personally liable under the JAB award against Titan.

### A.  Summary Judgment Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir. 2001). A genuine issue of material fact exists "only if there is sufficient evidence for a jury to return a verdict for that party." *Alexander*, 263 F.3d at 680, *citing Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir.

1999). When making this determination, the court must examine the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Alexander*, 263 F.3d at 680.

## B.     Enforcement of JAB Award Against Titan

It is well settled in the Seventh Circuit that the "failure to challenge an arbitration award within the applicable limitations period renders the award final." *See International Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). Therefore, "challenges in the nature of grounds to vacate the award may not be asserted as defenses to a subsequent enforcement action." *Id.* The prescribed time period is intended to "enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 277 (7th Cir. 1989). Plaintiff brought this action to enforce its arbitration award pursuant to § 301 of the LMRA. Because the LMRA provides no statute of limitations for actions challenging arbitration awards, timeliness is to be determined by reference to the appropriate state statute of limitations. *Plumbers' Pension Fund, Local 130 v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985). Under the Illinois version of the Uniform Arbitration Act, 710 ILCS 5/12(b), the applicable limitations period for challenging all arbitral awards in Illinois is 90 days. *Sullivan v. Gilchrist*, 87 F.3d 867, 870 (7th Cir. 1996).

From the time that Titan received the JAB award at West's residence on January 21, 2001, no representative from Titan ever filed suit to vacate the award. Although some of the named Defendants filed a response to the IDC's complaint to enforce the arbitration award on May 9, 2001, neither Titan nor any its representatives, including Radice, filed a motion to vacate the award

11

within 90 days of the receipt of the award.[10] The failure to file a motion to vacate within the limitations period precludes Radice from raising any challenges at this time, including those regarding the actual amount of the arbitration award, the finality of the award, or whether the award required formal confirmation before it is enforceable. See Gilchrist, 87 F.3d at 871 (only avenue for dismissal of an arbitration award is a timely suit to vacate); Sullivan v. Lemoncello, 36 F.3d 676, 681 (7th Cir. 1994) (defendant's failure to seek vacation of arbitration awards within the 90-day limitation period barred it from challenging the plaintiff's action to enforce the awards). This court concludes that it is unnecessary to evaluate the merits of Defendant's challenge to the enforcement action because any such challenge is time-barred.

### C. Radice's Personal Liability under JAB Award

The Union asserts further that because Titan is an unincorporated business entity and Radice is an active participant in the operations of the business, he is personally liable for Titan's obligation to comply with the JAB award consistent with Illinois statutory and common law. Radice argues that even if he were otherwise personally liable for Titan's debts, the award cannot be enforced against him because he was denied his constitutional right to defend himself before the arbitration panel. Radice also asserts that the court does not have jurisdiction to confirm the arbitration award because he was not a party to the arbitration proceeding. Finally, Defendant argues that there is a genuine issue of material fact as to the proper amount of the arbitration award.

Under the LMRA, federal courts are authorized to fashion a body of federal law from the policy of national labor laws for enforcement of collective bargaining agreements. Textile Workers

---

[10] Defendant asserts that a motion to vacate was filed in November 2001, but has offered no evidence of any such motion as required by Local Rule 56.1. The January 17, 2002 letter from the Union's accountants to which Defendant refers the court makes no reference to any motion prepared by Defendant, nor does it suggest with whom or when any such motion had been filed. ((Eisen, Fey Letter.) In any event, any motion purportedly filed by Defendants in November 2001 was filed well beyond the 90-day period discussed in the decision.

12

*Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451, 456 (1957). Moreover, state law may be resorted to in order to best carry out the federal policy. *Id.* at 457. Here, the court considers Illinois statutory provisions concerning Radice's liability for Titan's obligations.

Pursuant to 805 ILCS 5/3.20, "[a]ll persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." In *Richmond Wholesale Meat Co. v. Hughes*, 625 F. Supp. 584 (N.D. Ill. 1985), the court found that this principle applies to persons who have an investment in an organization and who actively participate in the policy and operation of the decisions of the organization. *Id.* at 589; *see also United States Fidelity & Guar. Corp. v. Putzy*, 613 F. Supp. 594, 597-602 (N.D. Ill. 1985). More recently, a court found a defendant acting as "president" of a corporation liable on a lease where the corporation never existed. *Inland Prop. Mgmt., Inc. v. McLallen*, No. 88 C 8191, 1990 WL 43510, at *6-7 (N.D. Ill. Apr. 4, 1990). There are also a number of early cases that establish at common law that a person in Radice's circumstances is liable for the debts of a business that such a person falsely represented was incorporated. *See Kent v. George M. Clark & Co.*, 181 Ill. 237, 54 N.E. 967, 969 (Ill. Oct. 16, 1899) (parties contracting in name of pretended corporation liable for contractual obligations); *Hipp v. Muehleisen*, 88 Ill. App. 55 (Ill.App. 1st Dist. Mar. 13, 1900) (physicians who pretended to be officers of a corporation were personally liable for accrued rent); *McCormick v. Seeberger*, 73 Ill. App. 87, 95-96, 106 (Ill.App. 1st Dist. Jan. 6, 1898) (directors of so-called national bank individually liable for bank's failure to pay rent).

Under the facts of this case, this court finds that Radice is liable for Titan's unpaid obligations based on his active participation in the business and financial affairs of Titan under Illinois statutory and common law. From the very first meeting when the group of individuals came together to establish Titan until the period in which Titan failed to make the required benefit fund contributions, Radice exercised authority on behalf of Titan, an unincorporated business entity.

13

Specifically, Radice identified himself to the IRS and Titan's bank as president of the company, obtained information about wage rates and benefit fund contributions from the Union, paid Titan's "corporate" obligations to the tune of $30,000.00, exercised authority to write checks from Titan to himself, and handled other significant administrative matters.

Radice has offered no direct response to Plaintiff's arguments for imposing personal liablity for the debts and liabilities of unincorporated entities under Illinois law. Instead, he argues that he is not personally liable for Titan's obligations because he was deprived of due process of law and is entitled to exercise his constitutional right to "confront his accusers." (Defendant's 56.1 Resp., at 2-3.) Defendant not only fails to cite any case law to support his contentions, but also inappropriately invokes the Sixth Amendment of the Constitution, which only provides such protections in criminal prosecutions. U.S. CONST. amend. VI.; *Austin v. United States*, 509 U.S. 602, 608 (1993). Clearly, this action does not involve a criminal prosecution.

Second, Defendant asserts that the court does not have jurisdiction to confirm an arbitration award where the individual against whom confirmation is sought was not a party to the arbitration hearing. (Def.'s 56.1 Resp., at 4-5.) The Union contends that Defendant's claim is contrary to federal precedent addressing labor arbitration. (Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment Against Defendant Radice (hereinafter, "Pl.'s Reply Mem.").) Specifically, the IDC argues that the decision in *Plumbers' Pension Fund, Local 130 v. A-Best Plumbing & Sewer, Inc.*, No. 88 C 3087, 1992 WL 59098 (N.D. Ill. March 13, 1992) is persuasive in establishing that an individual defendant does not have to be a party to arbitration proceedings in order to be held personally liable for a JAB award entered against him.

In *Plumbers' Pension Fund*, a union sought summary judgment on the issue of whether two individual defendants were personally liable for an arbitration award entered against a corporation they controlled. In granting summary judgment in favor of the plaintiff union, the court held that although the individual owners were not parties to the labor agreement, they were liable for the

14

corporation's obligations under a collective bargaining agreement because the circumstances of the case made it proper to pierce the corporate veil. *Id.* at *18. In that case, as in the one currently before the court, corporate formalities were not observed, "personal" payments were made from the business entity to its individual officers without explanation, and the entity in question appears to have been woefully undercapitalized. As the Plaintiff here notes, moreover, its case for extending individual liability is significantly more compelling than that of the Plumber's Pension Fund: Because Titan never pursued incorporation, this court need not pierce a corporate veil before finding Radice liable. Just as the defendant individual owners in *Plumbers' Pension Fund* were liable despite not being parties to the collective bargaining agreement, this court holds Radice liable for the unincorporated Titan's obligations, pursuant to 805 ILCS 5/3.20 and Illinois common law.

Third, Defendant asserts (without reference to any authority) that if he is held liable for Titan's obligations, he should be entitled to introduce evidence rebutting Plaintiff's allegations. (Def.'s Resp. to Pl.'s Mot. for Summ. J., at 4-5.) The Plaintiff argues that the absence of a confirmation of the JAB award does not interfere with enforcement of that award against Radice because there is no authority for the notion that an arbitration award must first be confirmed before it can be enforced. The court agrees and concludes that confirmation is unnecessary for enforcement of the award. In any event, in this case the necessary confirmation arguably has already occurred. On October 23, 2001, the court entered judgment in favor of Plaintiff and against Defendant West by agreement. West has since moved to vacate the judgment, but the court denied his motion on May 23, 2002, *see Illinois District Council No. 1 of the International Union of Allied Bricklayers and Allied Craftworkers, AFL-CIO v. West*, No. 01 C 716, 2002 WL 1046703 (N.D. Ill. May 23, 2002), and Mr. West's appeal from the October 23, 2001 judgment is now pending. Mr. Radice had appeared through counsel several months before the agreed judgment was entered and was certainly on notice of the status of this case. Finally, Defendants retained the right to challenge the Union's calculations; as noted above, the JAB award specifically provides

15

that once the contractor pays the amount owed to the Union in full, he can obtain a full hearing from a JAB before any of the money is disbursed. (JAB Award.)

Finally, Defendant argues that there is a genuine issue of material fact as to the proper amount of the arbitration award, and that this court must therefore deny Plaintiff's motion for summary judgment. Even if the proper amount awarded by the JAB is incorrect, the court reiterates that the Defendant is precluded from raising this argument at this time because of his failure to timely file a suit to vacate the arbitration award. In any case, a careful review of the two audits satisfies this court that no mistake was made here: the first audit resulted in an award of $65,256.07 including benefit fund contributions, dues, liquidated damages, audit fees, *and* wages, while the second audit performed in January 2002 and addressing all costs *except* wages, calculated a total due of $35,830.46. Plaintiff is not attempting to obtain a windfall of over $30,000, as the Defendant asserts, but correctly argues that the two audits had different scopes.[11]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment against Defendant Radice (Doc. No. 69-1) is granted. Judgment is entered in favor of Plaintiff and against Defendant Radice in the amount awarded by the JAB.

ENTER:

Dated: August 20, 2002

REBECCA R. PALLMEYER
United States District Judge

---

[11] Plaintiff also argues that some of the Defendant's responses to the Plaintiff's 56.1 Statement were not properly submitted pursuant to Local Rule 56.1. In light of its disposition of this case, the court dismisses Plaintiff's objections as moot.

16