# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 716 | **DATE** | 8/26/2003 |
| **CASE TITLE** | Illinois District Council No. 1 of The International Union of Bricklayers and Allied Craftworkers, AFL-CIO vs. Donald W. West, Individually and d/b/a Titan Erectors, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment [Doc. No. 114-1] is granted in part (as against Defendant Thomas Marzullo) and denied in part (with respect to Defendant Larry Fromelius). Fromelius' motion for summary judgment [Doc. No. 119-1] is granted. Judgment is entered in favor of Plaintiff and against Defendant Thomas Marzullo in the amount awarded by the JAB, and in favor of Larry Fromelius.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | 4 number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | AUG 2 7 2003 date docketed | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | | 129 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | 03 AUG 26 PM 2:25 | 8-26-03 date mailed notice | |
| ETV | courtroom deputy's initials | FILED FOR DOCKETING ED-1 | | | |
| | | Date/time received in central Clerk's Office | ETV mailing deputy initials | | |

| | | |
|---|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 01 C 716 |
| DONALD W. WEST, Individually and d/b/a TITAN ERECTORS; THOMAS E. MARZULLO, LADDIE FROMELIUS, TERRANCE M. MARTIN, GERALD V. RADICE, and LARRY FROMELIUS, Individually and d/b/a TITAN ERECTORS;) AND TITAN ERECTORS, INC. | ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) ) | |

DOCKETED

AUG 2 7 2003

## MEMORANDUM OPINION AND ORDER

On or about May 28, 1999, Plaintiff Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, (the "Union") entered into a collective bargaining agreement ("CBA") with persons acting on behalf of an employer entity called Titan Erectors ("Titan"). When Titan allegedly failed to pay wages and fringe benefit fund contributions, the Union filed a grievance against Titan pursuant to the requirements of the CBA. A Joint Arbitration Board ("JAB") issued an award in favor of the Union on June 8, 2000, finding Defendants Titan and its principal, Defendant Donald W. West, liable for the full amount of damages. Defendants did not comply with the JAB award.

The Union timely filed this action on February 1, 2001, requesting this court to enforce the arbitration award entered in its favor and against Donald W. West, Thomas E. Marzullo, and Titan. In two amended complaints, the Union named additional defendants: Laddie Fromelius, Larry

Fromelius (Laddie and Larry are brothers), Terrance M. Martin, and Gerald V. Radice.[1]  Count I, the only portion of the complaint relevant to the present motions, alleges that the individual Defendants are personally liable for Titan's obligations under the CBA and the JAB award.  The court previously entered judgment against Radice. *Illinois Dist. Council No. 1 of the Int'l Union of Bricklayers and Allied Craftworkers, AFL-CIO v. West*, No. 01 C 716, 2002 WL 1941545 (N.D. Ill. Aug. 21, 2002).  In another opinion, the court denied West's motion to vacate a settlement judgment between West and the Union entered on October 23, 2001. 2002 WL 1046703 (N.D. Ill. May 23, 2002).  On January 24, 2003, this cause was dismissed with prejudice against Martin.

The Union now seeks summary judgment against two of the remaining Defendants, Larry Fromelius and Thomas Marzullo.  Fromelius filed a cross-motion for summary judgment, seeking dismissal from this action.  For the following reasons, the court grants the Union's motion in part and denies it in part, and grants Fromelius' cross-motion.

## FACTUAL BACKGROUND

The Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5).  (Union's Statement of Uncontested Facts in Support of Motion for Summary Judgment, hereinafter "Union's 56.1," ¶ 2.)  Titan is an unincorporated business entity and an "employer" within the meaning of 29 U.S.C. § 152(2).  (*Id.* ¶ 3.) This court has jurisdiction over this matter and venue is proper pursuant to § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and (c).[2]  (*Id.* ¶ 1.)

---

[1]     In this opinion, the court shall refer to Larry Fromelius as "Fromelius," and Laddie as "Laddie."

[2]     Marzullo objects that this court has no jurisdiction over him because the JAB did not enter an award specifically against him.  (Marzullo's Response to Plaintiff's Motion for Summary Judgment, at 6-7.)  For the reasons explained in an earlier opinion in this case, the court overrules this objection: the individual Defendants may be liable for the unincorporated Titan's obligations, pursuant to 805 ILCS 5/3.20 and Illinois common law, even if the JAB award was not entered against them. *See Illinois Dist. Council No. 1*, 2002 WL 1941545 *8, citing *Plumbers' Pension Fund, Local 130 v. A-Best Plumbing & Sewer, Inc.*, No. 88 C 3087, 1992 WL 59098 (N.D. Ill. March 13, 1992).

2

The business entity known as Titan came into existence as a result of discussions in 1998 among a group of people involved with a company named Fortech, LLC ("Fortech"), which is in the business of manufacturing building panels. (Affidavit of Larry Fromelius, hereinafter "Fromelius Aff.," ¶¶ 2, 3, Attached to Defendant Larry Fromelius' Combined Memorandum in Support of His Cross-Motion for Summary Judgment, and in Response to Plaintiff's Motion for Summary Judgment, hereinafter "Fromelius' Mem."[3]) Fortech's managing member was WFT Management, which is owned by the West Family Trust, and Fortech and WFT operated from the same address.[4] (Union's 56.1 ¶ 5.) Defendant Marzullo has served as the Chief Financial Officer for WFT Management since 1997. (*Id.* ¶ 6.) Fromelius owns a 25 percent membership interest in Fortech, and he estimates his investment in Fortech to be between one and two million dollars. (*Id.* ¶ 7.)

On January 31, 1998, a meeting to discuss Titan's formation was held at a private residence owned by Larry Fromelius and inhabited by his brother Laddie. (*Id.* ¶ 9.) Attendees included Larry and Laddie Fromelius, Marzullo, West, Radice, and Martin, as well as Mike Romanelli (Romanelli was there as a potential Titan employee). (*Id.* ¶ 10.) Larry Fromelius explained that one of the reasons he was interested in setting up Titan was that he hoped it might provide an employment opportunity for Laddie. (Fromelius Deposition, hereinafter "Fromelius Dep.," at 15, Attached to Fromelius' Mem.) Laddie Fromelius testified that four or five weeks before the meeting, Larry Fromelius told Laddie that Larry was part of a group putting together a new business to serve as the erection company for Fortech, that Larry was going to be the "money man" behind the project, and that the group wanted to take advantage of Laddie's experience and knowledge in the

---

[3]    Fromelius has not numbered the exhibits attached to his memorandum, therefore the court shall simply refer to them by name.

[4]    Marzullo explained that WFT raises funds (he did not explain for what), and manages the West Family Trust's funds. (Marzullo Deposition at 6, 7, attached to Union's 56.1.) The court is unaware of WFT's legal status, although Marzullo has represented that it is a corporation (he did not identify of which state).

operation of the business. (Union's 56.1 ¶ 8.) Marzullo learned of the plan to create Titan through his position with WFT Management, and Marzullo and West asked Radice to become involved in Titan's operations. (*Id.* ¶ 11.) Marzullo explained that he took notes at the meeting for the benefit of WFT and Fortech. (Marzullo Aff. ¶ 5.)

At the meeting, the group discussed their understanding that the new business entity would enter into collective bargaining agreements with the Bricklayers or Iron Workers unions to provide labor. Laddie himself opposed working with organized labor, and when he learned that Titan would not operate on a non-union basis, Laddie announced that he did not want to be involved and left the meeting.[5] (*Id.* ¶ 12.) Larry Fromelius acknowledges that he advanced money to help Titan start up, although he does not recall how much. (Fromelius Aff. ¶ 3.) Larry did not want to make the investment directly, however. He explained that he believed that his involvement in an erection business would present conflict with other Fortech investors (he did not say why), and that he wanted to shield himself from potential liability (he did not explain from what). Accordingly, Larry Fromelius chose to have Laddie write the check and then reimburse Laddie in the same amount. (Union's 56.1 ¶¶ 15, 16.) Laddie confirmed this testimony; although he could not recall the date, he testified that Larry Fromelius asked him to give West a check for $25,000.00, and then Fromelius reimbursed Laddie for that amount. (*Id.* ¶ 17; Laddie's Deposition at 23, 24, attached to Union's 56.1.)

Larry Fromelius states he never had the intention or expectation that he would become an officer of Titan or responsible for its management or operation, and during the course of Titan's business activities, Fromelius claims that he never engaged in any management or control. (Fromelius Aff. ¶¶ 7, 8.) West, however, was actively involved in Titan's operations and was the

---

[5]    In fact, Laddie eventually wound up working for Titan as a consultant, for which he received health insurance benefits, but no other compensation. (Fromelius Aff. ¶¶ 13, 14; Laddie Deposition at 41, attached to Union's 56.1.) It is undisputed that Larry Fromelius spoke with West to ensure that Laddie received this medical coverage. (Union's 56.1 ¶ 42.)

4

only individual officer of the entity whom the JAB entered its award against, testified in his deposition that Larry Fromelius had ongoing discussions about the business with at least West and Radice, and that Fromelius expressed a particular interest in the equipment used in Titan's operations. West said that Tom Colby, Titan's on-site work manager, occasionally asked Fromelius questions (the nature of those questions has not been identified) and Fromelius answered him. (West Deposition, at 48, 93, attached to Union's 56.1.)

On February 26, 1998, Radice, who had identified himself as President of Titan, completed a corporate resolution form on behalf of Titan in order to open a bank account at Northern Trust Company. (Union's 56.1 ¶ 19.) On that form, Radice identified Marzullo as Secretary-Treasurer of Titan. (*Id.*) Marzullo denies that Radice ever informed him of this and states that he never gave Radice permission to designate him as such. (Marzullo's Answers to Union's 56.1 ¶ 19.) Marzullo claims that he did not learn that Radice put his name on the company's papers until 2001, when documents were produced in connection with this lawsuit. (Marzullo Affidavit ¶ 8, attached to Marzullo's Response to Union's Motion for Summary Judgment, hereinafter "Marzullo's Response.") Marzullo admits, however, that he never objected to anything Radice did on behalf of Titan, and agrees that he was a co-signatory with Radice on Titan's accounts. (Marzullo's Answers to Union's 56.1 ¶¶ 20, 21.)

In his affidavit, Larry Fromelius explained that at the time of the initial meeting and all times thereafter, it was his understanding that Titan was to be formed either as an Illinois corporation or as a limited liability company under Illinois law (similar to Fortech). (Fromelius Aff. ¶ 4.) Fromelius testified that he would never have invested in Titan if he had known that this would not be the case. (*Id.*) Fromelius states that he was never advised that Titan had not been formed as a corporation or limited liability company. (*Id.* ¶ 6.) Marzullo was involved in discussions of Titan's incorporation early on, but never followed up or did anything to determine whether Titan ever incorporated. (Union's 56.1 ¶ 22.) Titan was never incorporated.

On or around May 28, 1999, Defendants Marzullo and Martin signed a collective bargaining agreement on Titan's behalf with the Union.[6]  The CBA incorporated by reference certain substantive provisions of collective bargaining agreements negotiated between the Union and various employer associations. (Second Amended Complaint ¶ 11.) Although Larry Fromelius was aware that Titan might employ union labor, he was never involved in Titan's entry into the CBA with CDI. (Fromelius Aff. ¶ 10.)

Marzullo testified that he played no role in hiring employees for Titan, and the record does not contain evidence that Larry Fromelius had a role in hiring either, except with respect to his brother. (Marzullo Deposition, hereinafter "Marzullo Dep.," at 33, attached to Union's 56.1.)  At some point, Marzullo did learn that Titan had hired employees (he could not recall who informed him), and informed Radice of these events. (Marzullo Dep., at 32.) Although the record does not clarify how he came to take on the role, Marzullo became responsible for Titan's payroll. (Union's 56.1 ¶¶ 27-28.)  On an unspecified date, Marzullo and Radice made a trip to the Union's offices to discuss pay rates for Union employees. (Radice Deposition, at 56-58, attached to Union's 56.1.) The two met with Mr. Joyce, who gave them a printed document indicating union dues that had to be paid on an hourly basis, including payments for health and welfare, pension, and annuity. (Id. at 58.) Radice testified that Titan made its first payments to Union employees within a week or two of that meeting.[7] (Id.) Although the record does not clarify specific dates, Marzullo also made a separate trip to the Union's offices with West, where he obtained additional information and various schedules and forms concerning required contributions to the Union's health and welfare, pension, annuity, and similar funds. (Union's 56.1 ¶ 26.)

---

[6]     The record currently before the court does not include a copy of the CBA, but the JAB award attached to the Union's Complaint notes that Marzullo signed the CBA on May 28, 1999. (JAB Award, Ex. A to Complaint.)  The record does not indicate who signed on the Union's behalf.

[7]     The parties have not identified who signed the checks.

The record is somewhat fuzzy regarding Titan's attempts to fulfill its obligation to provide medical coverage to its employees. On October 1, 1998, Marzullo wrote to Radice about Titan's insurance needs and its obligations to post a bond as required by the Union. (Union's 56.1 ¶ 31.) Neither party submitted a copy of that letter, however, and at his deposition Marzullo did not recall whether insurance for Union employees was ever obtained, though he did recall making arrangements to provide health insurance to Laddie Fromelius and Terrance Martin. (*Id.*)

Marzullo's role in connection with the Titan payroll was to collect employee information, make sure their hours "made sense," and then forward the hours to Radice, who reviewed, signed, and submitted the forms.[8] (Marzullo Dep., at 63, 76.) Marzullo's duties entailed regular communication with individuals at Titan's various job sites. (*Id.*) According to Marzullo, Radice never made any changes on the forms, nor did any Titan official ever make payment to employees on them.[9] (*Id.*) Marzullo also requested and received certain forms from the Union's Washington, DC international headquarters which Marzullo was expected to complete, reflecting the hours worked by Titan's employees. (*Id.* at 75.) It is undisputed that Titan made no payments for the fringe benefit fund contributions. (Union's 56.1 ¶ 27.) Marzullo understood at the time that the reason Radice did not pay the employees was because there were no funds available in Titan's account. (Marzullo Dep., at 76.)

Radice's description of Marzullo's role with Titan is somewhat inconsistent. On the one hand, when asked what Marzullo's role was with Titan, Radice responded that he was "[j]ust a member of the group." (Radice Dep., at 55-56.) Radice stated that he did not often look to Marzullo for direction, except with regard to the Titan payroll. (*Id.* at 56.) Later, however, Radice

---

[8]    The record does not indicate where Radice sent the forms.

[9]    This conflicts with Radice's testimony that Union employees were paid, at least for a while. The court need not resolve this conflict in order to decide the present motions, however.

testified that at times he turned to either Marzullo or West when he needed money to satisfy Titan's obligations, and always received the money requested. (*Id.* at 60-61.) Radice explained that he had "regular ongoing contact" with Marzullo as part of the venture over the years, and Radice stated, "[Marzullo] was my contact when I had problems for insurance or for whatever the situation was, I was contacting him." (*Id.* at 268-69.) West testified in an affidavit that all of the work Marzullo did in connection with the Titan entity was at West's direction and was intended to facilitate the functioning of Fortech and WFT Management. (West Aff. ¶ 7, Attached to Marzullo's Response to Union's Motion for Summary Judgment.)

From time to time in 1998, Larry Fromelius gave additional money to Titan when he received requests for certain start-up expenses such as securing liability and workers' compensation insurance coverage. (Fromelius Aff. ¶ 8.) On one occasion, Fromelius loaned Titan some equipment (a roto hammer and some slings) necessary for Titan to get the erection work underway. (*Id.* ¶ 9.) On October 30, 1998, Marzullo wrote to Larry Fromelius requesting that Fromelius make arrangements with Laddie to fund $5,000.00 for Titan's payroll. (Union's 56.1 ¶ 33.) The record indicates that Titan received at least two checks for $5,000 from Laddie's account, as well as another check for $1,500 and two checks for $2,000. (*Id.* ¶ 38.) Laddie was reimbursed by Larry Fromelius for the $5,000 checks; but the record is not clear as to whether he was reimbursed for the others. (Laddie Deposition at 27, 28, attached to Union's 56.1.) In October and November 1998, Laddie made two more payments to Titan totaling $21,000. (*Id.*) Laddie stated in his deposition that he does not recall whether he wrote and signed those checks himself, because Larry Fromelius had the authority to write checks from Laddie's account, as long as he later reimbursed Laddie. (*Id.*) Another check for $8,600, dated October 10, 1998 and payable to Titan, was drawn on Laddie's account. (*Id.* ¶ 39.) Radice endorsed the check over to Petrus &

Associates.[10] (Radice Dep., at 210.) Fromelius was ultimately responsible for all of the payments Laddie made to the business. (Union's 56.1 ¶ 40.)

Marzullo also contributed personal funds to Titan. In approximately July 1999, Marzullo learned while out of town that Titan needed money to meet its payroll needs. He arranged for his wife to write a check for $8,500 to Titan, which Marzullo characterized as a loan. (Id. ¶ 34.) The loan was not secured by a note and Titan ultimately returned only $8,000.00 to Mrs. Marzullo. (Id. ¶ 35.)

Pete Marinopoulos, President of the Union, wrote to Titan Erectors on November 12, 1999, informing them that the Union believed the company to be in violation of the CBA.[11] (Letter from Marinopoulos to Titan Erectors of Nov. 12, 1999, Attached to Marzullo Dep., Fromelius' 56.1.) Specifically, Marinopoulos complained that Titan had violated provisions on the work week and payment of wages; failed to pay wages and make fringe benefit fund contributions; and failed to abide by other unspecified work rules. (Id.) Marinopoulos notified Titan that the Joint Arbitration Board would meet on December 1, 1999 to consider the Union's grievance, and urged Titan to send a representative to appear and present the company's position. (Id.) Titan acknowledged receipt of Marinopoulos' letter on November 15, 1999, when Marzullo signed the United States Post Office Certified Mail slip. (Certified Mail Slip signed by Thomas Marzullo on Nov. 15, 1999, Attached to Marzullo Dep., Fromelius' 56.1.)

On December 1, 1999, West appeared on behalf of Titan at the JAB hearing. (Second Amended Complaint ¶ 12.) The record does not reflect what occurred at the hearing, nor any

---

[10]    The record does not explain the relationship between Petrus & Associates and Titan, nor does it clarify the nature of Petrus' business.

[11]    Marinopoulos addressed his letter to "gentlemen," and did not single out a specific Titan representative. (Letter from Marinopoulos to Titan Erectors of Nov. 12, 1999, Attached to Marzullo Dep., Fromelius' 56.1.)

further events regarding the arbitration proceedings until June 8, 2000,[12] when the JAB rendered its decision on the charges and concluded that Titan was liable for unpaid wages, fringe benefit fund contributions, liquidated damages, dues, and audit fees totaling $65,256.07. (JAB Award, Attached to Second Amended Complaint.) The JAB also determined that West was personally bound by his individual agreement to make this payment, and ordered Titan to post a $25,000.00 bond to protect against future delinquencies. The JAB award provided that Titan must abide by the CBA in the future, and that if the award were not satisfied, then Titan and West would also be required to reimburse the Union for all legal fees and costs associated with enforcement proceedings, and for interest accruing from the original hearing date (December 1, 1999). (Id.) To date, the Defendants have not complied with the JAB award. (Second Amended Complaint ¶ 18.)

On March 27, 2000, Marzullo sent the Union's lawyer fringe benefit contribution fund reports for July 1999 through February 2000 for the entity identified on the forms as "Titan Erectors, Inc." The forms were accompanied by a letter signed by Marzullo on "Titan Erectors, Inc." letterhead. Marzullo prepared that letterhead himself. (Union's 56.1 ¶ 28.)

On February 1, 2001, the Union filed this action to enforce the arbitration award, and on January 4, 2002 filed a Second Amended Complaint. During the pendency of this lawsuit, Marzullo prepared figures regarding the amount of wages Titan asserts it owed to employees. (Radice Dep., at 155.) In November 2001, Marzullo and Radice prepared and sent letters to the former Titan employees proposing that the employees agree to accept the amount of wages Titan calculated was owed to them. (Radice Dep., at 155-56.) It is undisputed that these amounts were different

---

[12]     Although the record does not indicate whether these events bore a connection to the arbitration proceedings, on March 27, 2000, Marzullo sent the Union's lawyer fringe benefit contribution fund reports for July 1999 through February 2000 for the entity identified on the forms as "Titan Erectors, Inc." The forms were accompanied by a letter signed by Marzullo on "Titan Erectors, Inc." letterhead. Marzullo prepared that letterhead himself. (Union's 56.1 ¶ 28.)

(the court presumes they were lower) than the amounts sought on the employees' behalf by the Union in the JAB proceedings. (Union's 56.1 ¶ 47.)

Larry Fromelius contends that he was never advised, nor did he have any knowledge, that Titan was involved in any dispute with the Union. Fromelius states, further, that he was unaware that Titan had any unpaid obligations to the Union, or that proceedings involving the resolution of disputes with the Union took place. He denies having any knowledge of the matters giving rise to this lawsuit until after it was commenced. (Fromelius Aff. ¶ 11.) West testified that it would have been his normal practice to consult Fromelius about the Union's grievance, and West most likely would not have attended the JAB hearing if either Radice or Fromelius had told him not to, but he testified that he did not specifically remember speaking with Fromelius about this grievance. (Union's 56.1 ¶ 45.)

The record does not indicate how long Titan operated under the CBA, but Titan ceased operations in February of 2000. (Marzullo Dep., at 62.)

## DISCUSSION

The issues raised by the present motions concern whether Defendants Marzullo and Fromelius may be held liable for the arbitration award issued by the JAB. The Union argues that Marzullo and Fromelius are liable under Illinois law for Titan's unpaid obligations under the JAB award and has moved for summary judgment on this issue. Fromelius has filed a cross-motion for summary judgment, asking the court to dismiss the action against him. (Fromelius' Combined Mem. in Support of his Cross-Motion for Summary Judgment, and in Response to Plaintiff's Motion for Summary Judgment, hereinafter "Fromelius' Mem.," at 2.) Marzullo has not filed a cross-motion, but claims he cannot be held personally liable under Illinois law.

### A.    Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

11

and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir. 2001). A genuine issue of material fact exists "only if there is sufficient evidence for a jury to return a verdict for that party." *Alexander*, 263 F.3d at 680, quoting *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). When making this determination, the court must examine the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Alexander*, 263 F.3d at 680.

**B.     Fromelius and Marzullo's Personal Liability under the JAB Award**

Under the Labor Management Relations Act, federal courts are authorized to fashion a body of federal law from the policy of national labor laws for enforcement of collective bargaining agreements. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451, 456 (1957). Moreover, state law may be resorted to in order to best carry out the federal policy. *Id.* at 457. Here, the court considers Illinois statutory provisions concerning Fromelius and Marzullo's liability for Titan's obligations. *See Illinois Dist. Council No. 1*, 2002 WL 1941545 * 7.

Pursuant to 805 ILCS 5/3.20, "[a]ll persons who assume to exercise corporate powers without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." In *Richmond Wholesale Meat Co. v. Hughes*, 625 F.Supp. 584 (N.D. Ill. 1985), the court found that this principle applies to persons who have an investment in an organization and who actively participate in the policy and operation of the decisions of the organization. *Id.* at 589; *see also United States Fidelity & Guar. Corp. v. Putzy*, 613 F.Supp. 594, 597-602 (N.D. Ill. 1985).

The Union asserts that because Titan is an unincorporated business entity and Fromelius

and Marzullo are active participants in the operations of the business, they are personally liable for Titan's obligation to comply with the JAB award consistent with Illinois statutory and common law. The Union also argues that it is appropriate for the court to consider federal labor policy in deciding this case. (Union's Memorandum in Support of Summary Judgment, hereinafter "Union's Mem.," at 4.) With that in mind, the Union urges the court to consider first, the policy favoring the enforcement of collective bargaining agreements generally; second, the public policy favoring arbitration awards; and third, the policy favoring the collection of contributions owed to employee benefit plans. (*Id.* at 5.) The court shall address each Defendant's potential liability in turn.

　　1.　　*Fromelius*

The Union argues that Fromelius voluntarily participated in the Titan venture from the beginning, hoped to profit from it, had at least limited involvement with the conduct of the business, and knew that the entity would be entering into a collective bargaining agreement. (Union's Mem. at 6.) In the court's view, however, the record does not demonstrate that Fromelius had the level of active involvement required by the courts to hold an individual liable under Illinois law. In *Richmond*, which the Union cites as authority for its argument, the court held that the individual defendants could be liable if they were "actively operating" the corporation (which had dissolved). 625 F.Supp. at 589. In that case, both defendants had a financial investment in the corporation (together they owned all of its stock); defendant Dominick was vice president, treasurer, and chairman of the corporation's board of directors, and defendant Hughes was the secretary and a director; all checks from the corporation required one of their signatures, as did all warehouse receipts endorsed over to the bank; and the defendants each had significant contact with the bank regarding collateral for a loan to the corporation. *Id.* at 586, 589. The court held that they did actively operate the corporation, but remanded for a determination of whether the defendants knew or should have known of the corporation's dissolution (another requirement for personal liability). *Id.* at 589.

The record in this case indicates that Larry Fromelius invested heavily in Titan, was active in the company's start up (as evidenced by the fact that he hosted the first organizational meeting and encouraged his brother Laddie to work for the company), and continued to contribute money and serve as an advisor. In contrast to the defendants in *Richmond,* however, Larry Fromelius held no official title and apparently played no formal role in the business entity; his involvement appears to have been more analogous to that of a consultant than a director, president, or even secretary. The Union has cited no cases suggesting that an investment of money alone, combined with a more passive involvement in the company's functioning, is enough to establish personal liability for the debts of the company. West's testimony that he would not have attended the JAB hearing if Larry Fromelius asked him not to does demonstrate that Fromelius had authority over others, but does not prove that Fromelius was actually actively involved in the regular operations of company. For these reasons, the court rejects the Union's argument that 805 ILCS 5/3.20 applies to hold Fromelius liable for the arbitration award.[13]

The Union did not put all of its eggs in one basket, however, and also argues that Fromelius may be held liable under a "partnership theory." (Union's Mem. at 10.) It is not entirely clear from the Union's briefs whether it intends for the court to apply the doctrine of partnership by estoppel (in which persons may be held liable as if they were partners even though they had no intent to operate as a partnership), or whether the Union is arguing that Titan actually was a partnership. On the one hand, the Union argues that since Titan was clearly never a corporation, nor was it a

---

[13]     One further aspect of Fromelius' conduct deserves mention.  Although Larry Fromelius contributed heavily to Titan, he did so through his brother Laddie's bank account, and he admits that he did so in part to avoid liability (although he does not clarify what he expected to be liable for).  Although there may be several legitimate reasons for conducting business in this manner, the court cannot help but conclude that one of Fromelius' may have been to avoid the appearance of active involvement with Titan.  The court does not commend any effort to conceal or deceive, but concludes that the matter is not material to the court's conclusion, because even if Fromelius had written checks directly from his account, the court's decision would remain the same.

sole proprietorship, it must have been a partnership, and therefore Fromelius, who the Union contends was a partner, is liable. In addition, however, the Union cites *United States Fidelity & Guar. Corp. v. Putzy*, 613 F.Supp. 594 (N.D. Ill. 1985), a case involving partnership by estoppel. In any event, the court concludes that the only theory available to the Union is estoppel, because nothing in the record indicates that the Titan investors intended to form a partnership, as requisite under Illinois law. *Mallinga v. Harvey Family Medical Center*, 293 Ill. App. 3d 1001, 1005, 688 N.E.2d 816, 819 (1st Dist. 1997). An Illinois case from many years ago explains the partnership by estoppel theory as follows:

> Parties may so conduct themselves as to be liable to third persons as partners, when in fact no partnership exists as between themselves. The public are authorized to judge from appearances in professions, and are not absolutely bound to know the real facts; while the certain proof is positively known to the alleged parties to a firm . . . . On this latter ground parties who have attempted to organize a corporation, but have failed to comply with the law so as to perfect their incorporation, may be held liable as partners to creditors as in *Bigelow v. Gregory*, 73 Ill. 197. This liability rests on the doctrine of estoppel.

*Bushnell v. Consol. Ice Machine Co.*, 138 Ill. 67, 27 N.E. 596, 597-98 (1891) (internal citations omitted). A more recent case has clarified that a person who allows himself to be held out as a partner with another may be liable for the acts committed by the other in the course of his apparent authority, even though there is no actual partnership. *Matter of Pinckard's Estate,* 94 Ill. App. 3d 34, 43, 417 N.E.2d 1360, 1367 (1st Dist. 1980). With these principles in mind, the court entertains the Union's argument about partnership by estoppel.

In *Putzy*, 613 F.Supp. 594, plaintiff, a corporation, granted defendant Putzy the authority to act as a representative and solicit applications for plaintiff's insurance and bond business in 1975. Putzy incorporated an agency known as Professional Insurance Planners, Inc. ("PIPI"), but just over a year later, PIPI dissolved for failure to pay its franchise tax. *Id.* at 595. By 1980, Putzy had built up a substantial debt for premiums he had collected but not turned over to plaintiff, and entered into a new agreement with plaintiff on behalf of a successor corporate agency, also known

15

as PIPI. *Id.* Still unable to pay off the debt, Putzy appealed to his son, defendant McManus, for the money, who agreed to provide capital in return for a 51 percent ownership interest in PIPI. *Id.* at 596. Putzy apparently advised McManus that PIPI was a Subchapter S corporation, but PIPI never filed a tax return claiming this status, nor was anything ever filed with the Secretary of State to record issuance of any shares of PIPI stock. PIPI's tax returns reflected PIPI's status as a partnership. *Id.* A few years later, when plaintiff sued for the unsatisfied portion of the debt, plaintiff attempted to hold McManus personally liable as a partner.

The *Putzy* court noted that "Illinois courts have never squarely addressed the legal issue presented by this case: whether a stockholder who invests capital in a defective corporation with almost no semblance of corporate formality, may be held personally liable as a partner on corporate debts even though he conducted no business on the corporation's behalf." *Id.* at 598. The court noted that some old Illinois cases suggest that unincorporated associations are partnerships, with all the members therefore personally liable. *Id.* at 599, citing *M.H. Vestal Co. v. Robertson*, 277 Ill. 425, 115 N.E. 629 (1917); *Loverin v. McLaughlin*, 161 Ill. 417, 44 N.E. 99 (1896); *Bigelow v. Gregory*, 73 Ill. 197 (1874). In another line of cases, however, Illinois courts have stressed the principle that a party acting on behalf of a legally incompetent principal cannot avoid personal liability for his conduct. *Id.*, citing *Pilsen Brewing Co. v. Wallace*, 291 Ill. 59, 125 N.E. 714, 715 (1919) (additional citations omitted). The court ultimately rejected the invitation to apply the partnership theory, pointing out that the cases relied on by the plaintiff all involved founding incorporators of a business, rather than subsequent shareholders such as McManus, who did not participate in the transactions creating PIPI's debt to plaintiff. *Putzy*, 613 F.Supp. at 599-600 (citations omitted). The court noted that there was no evidence that McManus got any benefit from his investment in PIPI other than some tax losses. *Id.* at 600.

The Union correctly notes that Fromelius' status is closer to that of a founding incorporator than that of a subsequent shareholder, and thus the case for liability is stronger here than in *Putzy*.

16

Additionally, Fromelius' level of activity with Titan was higher than McManus': Fromelius invested money over several years, he hosted Titan's organizational meeting, he was involved in getting Laddie hired as a consultant (complete with health benefits, which other Titan employees did not receive), and he continued to serve in an unofficial capacity as an advisor to Titan. Although the partnership by estoppel theory is perhaps the strongest basis for holding Fromelius liable for Titan's debt to the Union, the court concludes that it is not a perfect fit. The Illinois cases the court has found addressing this theory of liability generally include language suggesting that the would-be partner "represents himself" to the plaintiff or public as such, see *J. Huizinga Cartage Co. v. Bedrock Enterprises*, 177 Ill. App. 3d 346, 348, 532 N.E.2d 339, 340 (1st Dist. 1988), or is "held out" as a partner, see *Matter of Pinckard's Estate*, 94 Ill. App. 3d at 43, 417 N.E.2d at 1367. Fromelius, on the other hand, seems to have acted primarily behind the scenes, and although the record does not indicate when or how the Union learned about his role, there is nothing which suggests the Union dealt with Fromelius early on, or understood that Fromelius was acting as a representative of Titan. Therefore, the court declines to apply the partnership theory to find Fromelius liable for the arbitration award.

The Union argues, finally, that considerations of national labor policy provide further grounds for imposing personal liability upon Fromelius. The Union offers no case authority for this argument, however, and the court is not persuaded that declining to hold Fromelius liable for the arbitration award conflicts with federal labor policy. Several Defendants in this case have been held liable, and the Union is free to execute on those judgments. This does not mean, however, that the Union may hold liable every individual who had a connection with Titan, simply because of the public policy favoring enforcement of arbitration awards. Fromelius did play a significant role in Titan's formation, but his activity did not rise to the level of some of his co-Defendants, and as a result, the court concludes that the Union's motion for summary judgment with respect to Fromelius should be denied, and that Fromelius' motion should be granted.

2.   *Marzullo*

The record shows that Marzullo, on the other hand, played a large role in Titan's daily operations. Marzullo was designated as "Secretary-Treasurer" and took on the role of payroll coordinator, indicating that not only was he actively involved in the business, he was also aware (or should have been) that the fringe benefit fund payments were not being made.

Marzullo makes several arguments against liability. First, he states in his affidavit that all actions he took on Titan's behalf were performed as an employee of WFT Management, Fortech's managing agent. He contends that when an employee is acting within the scope of his employment, he is not individually liable for the corporation's debt, and therefore he cannot be held personally liable for the JAB award. (Marzullo's Response, at 4.)

In response to this argument, the Union notes that Marzullo did not claim in his deposition that he acted solely on WFT's behalf, and none of the documents Marzullo prepared on Titan's behalf indicate as such, either.[14] Even if the court were to consider the claim made in his affidavit, the Union argues that this defense would only help Marzullo if the Union had a claim against WFT and was seeking to hold Marzullo liable for WFT's actions. The Union argues that Marzullo has failed to provide authority for the proposition that an individual who would otherwise be liable under 805 ILCS 5/3.20 is absolved of such liability because at the same time that he was acting in the

_____

[14]    Because only portions of Marzullo's deposition have been entered into the record, the court is unable to determine whether the Union's assertion is true. The court is not convinced that Marzullo's deposition testimony conflicts with his affidavit. Marzullo testified in his deposition that on both occasions when he visited the Union's offices (once with Radice and once with West), he did so at West's request. (Marzullo Dep., at 181.) The record does not indicate whether West held a management position with WFT Management, but the name of the company suggests that he may have. (This of course is not enough to support Marzullo's claim that he acted solely on WFT's behalf; but it may be unfair for the Union to assert that Marzullo's affidavit was simply self-serving, when in fact Marzullo may not have been given an opportunity during his deposition to explain the nature of the relationship between his role at WFT and his work on Titan's behalf.) The court also notes that the documents the Union refers to have not been entered into the record, and therefore the court is unaware of whether they reflect Marzullo's status as "Secretary Treasurer" of Titan, or some other role.

name of a false corporation or serving as a participating and investor in the false corporation, he was also an employee of a separate corporate entity. (Union's Reply, at 11.)

The court agrees with the Union. Marzullo is correct that he generally cannot be held liable for WFT's wrongs, but he has failed to demonstrate (other than through his own affidavit) that he was acting within the scope of his employment with WFT when he took on the role of payroll coordinator, visited Union representatives, or invested money in Titan. He has not mentioned the name of an individual at WFT who ordered him to engage in these activities. Although Marzullo may not have become involved with Titan had it not been for WFT, the court concludes that Marzullo's employment with WFT is irrelevant to issue of whether he can be liable under Illinois law for the arbitration award.

Marzullo also argues that he did not have the requisite intent to be an investor or promoter of Titan, and thus cannot be held liable under Illinois law. (Marzullo's Response, at 4, 5.) Marzullo correctly cites Illinois cases which held that in order to hold an individual personally liable for the actions of a corporation which was involuntarily dissolved, the parties involved must have intended for the officer of the corporation to be liable. *Plepel's Estate v. Indust. Metals, Inc.,* 115 Ill. App. 3d 803, 806, 450 N.E.2d 1244, 1246 (1st Dist. 1983); *H.F. Philipsborn & Co. v. Suson,* 59 Ill.2d 465, 470, 322 N.E.2d 45, 48-49 (1974). As Judge Nordberg of this court pointed out in *Inland Prop. Mgmt., Inc. v. McLallen,* No. 88 C 8191, 1990 WL 43510 (N.D. Ill. April 5, 1990), however, that line of Illinois cases is distinguishable from the situation presented here, because they involved once validly incorporated entities which lost their charter. Judge Nordberg noted that

> [t]o extend *Plepel's* rule to this situation would permit formation of contracts under which one side would be bound only if it chose to be bound. In this case, [the corporate defendant] MDR Associates, Inc. could not be liable because there never was such a corporation; [the corporate officer] McLallen would not be liable because [plaintiff] Inland, due to its belief in the corporate existence of MDR Associates, intended for MDR Associates to be liable, not McLallen. In short, the rule proposed by McLallen would be a powerful engine for the perpetuation of fraud.

19

1990 WL 43510 * 7. The court finds the reasoning in *Inland Property Management* persuasive, and adopts it here, declining to require that the Union prove that the Union representatives and Titan organizers (including Marzullo) intended for personal liability to apply.

As Gerald Radice argued on an earlier motion in this case, Marzullo contends that holding him liable under the JAB award would violate his due process rights. Because the JAB did not enter an award specifically against him, he argues that the court has no jurisdiction to enforce the award against him. (Marzullo's Response, at 6.) Furthermore, because he was never given an opportunity to be heard at either of the JAB hearings,[15] and because the Union did not demand arbitration against him specifically, Marzullo claims he was deprived of the right to present evidence and cross-examine witnesses. (*Id.* at 7, 8.) Marzullo offers no case law to support his argument, and the court rejects it for the same reasons explained in its earlier opinion. *See* 2002 WL 1941545 *8. In that same opinion, the court also rejected Radice's claim that the court lacks jurisdiction to enforce an arbitration award where the individual against whom confirmation is sought was not a party to the arbitration hearing. *See id.*, citing *Plumbers' Pension Fund, Local 130 v. A-Best Plumbing & Sewer, Inc.*, No. 88 C 3087, 1992 WL 59098 (N.D. Ill. March 13, 1992) (defendant individual owners can be liable for an arbitration award entered against a corporation they controlled, despite not being parties to the collective bargaining agreement). Marzullo's legal arguments about due process and jurisdiction fail as well.

Finally, Marzullo urges that Titan was a partnership, and that under Illinois law, where judgment is entered against a partnership, but not against the individual partners, the judgment may not be satisfied by the personal assets of the individual partners. (Marzullo's Mem. at 8, citing *Johnson v. St. Therese Med. Ctr.*, 296 Ill. App. 3d 34, 694 N.E.2d 1088 (2d Dist. 1998); 735 ILCS 5/12-102 (additional citation omitted).) The court finds this argument to be without merit, however,

---

[15]     Marzullo claims he was not given such an opportunity but there is nothing in the record which suggests that he was actually prevented from attending the hearings.

given that the record indicates an intent on the part of Titan's organizers to form a corporation, not a partnership. In any event, the court is not convinced that Marzullo's argument is correct. *See* 805 ILCS 105/103.20 ("All persons who assume to exercise corporate powers without authority to so do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof"); 735 ILCS 5/2-411(b) ("An unsatisfied judgment against a partnership in its firm name does not bar an action to enforce the individual liability of any partner."); *see also Eastern Seafood Co. v. Barone*, 252 Ill.App.3d 871, 625 N.E.2d 664 (1st Dist. 1993) (partners need not be sued jointly for partnership debt). Because Marzullo was extensively involved in Titan's operations, the court concludes that the Union's motion for summary judgment should be granted, and judgment entered against Marzullo.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. No. 114-1) is granted in part (as against Defendant Thomas Marzullo) and denied in part (with respect to Defendant Larry Fromelius). Larry Fromelius' motion for summary judgment (Doc. No. 119-1) is granted. Judgment is entered in favor of Plaintiff and against Defendant Marzullo in the amount awarded by the JAB, and in favor of Larry Fromelius.

ENTER:

Dated: August 26, 2003

REBECCA R. PALLMEYER
United States District Judge